UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED JAN 1 0 2013

CLERK

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

JAN 1 0 2013

RECEIVED

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

ALLIANCE OF NONPROFIT MAILERS, )
)
Petitioner, )
)
v. )
)
POSTAL REGULATORY COMMISSION, ) No. 13-1006
)
and )
)
UNITED STATES OF AMERICA, )
)
Respondents. )

**PETITION FOR REVIEW**

Pursuant to Rule 15(a)(1) of the Federal Rules of Appellate Procedure, 39 U.S.C. § 3663 and 5 U.S.C. § 706, the Alliance of Nonprofit Mailers petitions this Court for review of Postal Regulatory Commission Order No. 1573, which the Commission issued on December 11, 2012, in Docket No. R2013-1, *Notice of Market-Dominant Price Adjustment*. In Order No. 1573, the Commission approved rates for Standard Mail that include discounts for mail presorting and other optional work sharing that pass through to users of nonprofit mail a smaller share of the Postal Service's savings from work sharing by those mailers than the Postal Service

offers to users of the commercial categories of Standard Mail for their optional work sharing. The Commission took this action without offering any reasoned justification for the discrimination as required by 39 U.S.C. § 403(c) and other provisions of Title 39.

Under 39 U.S.C. § 3633, the Court has jurisdiction to review Order No. 1573, venue lies in this Circuit, and this petition is timely.

The Alliance of Nonprofit Mailers asks the Court to remand Order No. 1573 for further proceedings consistent with the law, and for any other relief that may be just.

Respectfully submitted,

*David M. Levy*
David M. Levy
Matthew D. Field
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601
202-344-4000 (Telephone)
202-344-8300 (Fax)
dlevy@venable.com
mfield@venable.com

*Counsel for the Alliance of Nonprofit Mailers*

January 10, 2013

# CERTIFICATE OF SERVICE

I hereby certify that copies of this Petition for Review have been served today by First-Class Mail upon the following:

Mr. Stephen L. Sharfman
General Counsel
Postal Regulatory Commission
901 New York Ave., N.W.,
Suite 200
Washington, DC  20268-0001

Ms. Mary Anne Gibbons
Mr. Daniel J. Foucheaux
Law Department
United States Postal Service
475 L'Enfant Plaza, SW
Washington, DC 20260-1137

Mr. Eric H. Holder, Jr.
Attorney General of the United
  States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC  20530-0001

_____David M. Levy_____

January 10, 2013



IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

ALLIANCE OF NONPROFIT MAILERS, )
                                                               )
           *Petitioner,*                )
                                                               )
                       v.                 )
                                                                )
POSTAL REGULATORY COMMISSION, )  No. 13-1006
                                                               )
                    and              )
                                                                )
UNITED STATES OF AMERICA, )
                                                               )
           *Respondents.*             )

**DISCLOSURE STATEMENT
OF ALLIANCE OF NONPROFIT MAILERS**

The Alliance of Nonprofit Mailers ("ANM") submits this Disclosure Statement pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1.

1.    ANM is a membership organization of charities and other nonprofit organizations that use the mail to raise funds and dissemination information. ANM is organized as a nonprofit corporation under the laws of the District of Columbia, and has its principal place of business in the

District. ANM seeks to promote the interests of its members, *inter alia*, by participating in litigation concerning the rates of postage paid by mailers.

2. ANM is not publicly traded. No member of ANM, and no publicly traded entity, has an ownership interest in ANM. ANM is a trade association within the meaning of Circuit Rule 26.1(b), so no listing of the Alliance's members is required.

Respectfully submitted,

*David M. Levy*
David M. Levy
Matthew D. Field
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601
202-344-4000 (Telephone)
202-344-8300 (Fax)
dlevy@venable.com
mfield@venable.com

*Counsel for Alliance of Nonprofit Mailers*

January 10, 2013

# CERTIFICATE OF SERVICE

I hereby certify that copies of this Petition for Review have been served today by First-Class Mail upon the following:

Mr. Stephen L. Sharfman
Postal Regulatory Commission
901 New York Ave., N.W.
Suite 200
Washington DC  20268-0001

Ms. Mary Anne Gibbons
Mr. Daniel J. Foucheaux
United States Postal Service
475 L'Enfant Plaza, SW
Washington, DC 20260-1137

Mr. Eric H. Holder, Jr.
Attorney General of the United
  States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC  20530-0001

_David M. Levy_

January 10, 2013

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

JAN 10 2013

RECEIVED

Postal Regulatory Commission
Submitted 12/11/2012 11:28:22 AM
Filing ID: 85821
Accepted 12/11/2012

13-1006

UNITED STATES OF AMERICA
POSTAL REGULATORY COMMISSION
WASHINGTON, DC 20268-0001



ORDER NO. 1573
UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED JAN 10 2013
CLERK

Before Commissioners:     Ruth Y. Goldway, Chairman;
Nanci E. Langley, Vice Chairman;
Mark Acton;
Tony Hammond; and
Robert G. Taub

Notice of Market-Dominant     Docket No. R2013-1
Price Adjustment

ORDER ON STANDARD MAIL RATE ADJUSTMENTS AND RELATED MAIL
CLASSIFICATION CHANGES

(Issued December 11, 2012)

I.    INTRODUCTION AND OVERVIEW

In Order No. 1541, the Commission determined provisionally that, pursuant to 39 CFR 3010.13(j), the planned adjustments do not violate the price cap in 39 U.S.C. 3622(d); are consistent with, or justified by an exception to, the workshare discount limitations in 39 U.S.C. 3622(e); and establish prices that satisfy 39 U.S.C. 3626.[1] However, the Commission also found that the planned Standard Mail Flats rates failed to satisfy the applicable directives set forth in the FY 2010 Annual Compliance Determination (ACD) as were further clarified and reaffirmed in Order Nos. 1427 and

---

[1] Order No. 1541, Order on Price Adjustments for Market Dominant Products and Related Mail Classification Changes, November 16, 2012 (Order No. 1541).

**Standard Mail Price Changes**

| Standard Mail Product | Percent Change (%) |
|---|---|
| Letters | 2.610 |
| Flats | 2.617 |
| Parcels | 3.081 |
| High Density/Saturation Letters | 2.059 |
| High Density/Saturation Flats and Parcels | 2.092 |
| Carrier Route | 2.907 |
| Overall | 2.569 |

The new unused authority created in this proceeding is 0.001 percent. The sum of all unused rate adjustment authority for Standard Mail, from the instant price adjustment and previous price adjustments, now equals -0.379 percent.

To achieve the above-average price increase for the Standard Mail Flats product, the Postal Service makes two principal changes to its initially filed planned Standard Mail Flats prices. First, it reduces the prebarcoding discount between automation and non-automation Flats from 7.5 to 5.5 cents by increasing some automation prices and decreasing some non-automation prices.[4] Second, the Postal Service reduces the commercial pound-priced prices by 0.1 cent. See CAPCALC-STD-R2013 Order 1541.xls, tab: LFP New Prices. A number of minor adjustments were also made to mitigate the deviation from the desired overall price increase.[5] Id. at 4.

The Postal Service acknowledges that the Commission's FY 2010 ACD requested that the Postal Service provide "an explanation of how the proposed prices

---

[4] The passthrough between non-automation mixed ADC Flats and automation mixed ADC Flats has been reduced from 326.1 percent to 239.1 percent.

[5] These adjustments include reducing commercial and nonprofit discounts for automation 3-Digit Flats, non-automation ADC Flats, and non-automation 3-digit Flats. In addition, the commercial and nonprofit discount for automation 5-Digit Flats is increased. These adjustments do not alter the Commission's findings in Order No. 1541 concerning Standard Mail workshare discounts.

will move the Flats cost coverage toward 100 percent" (footnote omitted). *Id.* It states that given the short amount of time allowed to prepare revised rate adjustments and to obtain Governors' approval, it has not been able to assess the full impact of the revised price increase on Standard Mail Flats' projected cost coverage. *Id.* It also states that although it is complying with the Commission's directive by proposing an above-average price increase for Standard Mail Flats, it believes that the Commission overstepped its authority by ordering such an increase. *Id.* at 5.

*Comments.* The Commission received four comments on the revised Standard Mail price changes.

The American Catalog Mailers Association (ACMA) asserts that the Postal Service's response on remand complies with the Commission's directives that Standard Mail Flats prices be raised above the Consumer Price Index average.[6] ACMA Comments at 1. ACMA states that the Postal Service has done so without putting the catalog segment at undue risk or creating the need to completely rearrange prices for other types of mail, and urges the Commission to accept the newly proposed prices. *Id.*

The Direct Marketing Association (DMA) supports the Postal Service's adjustment although it is "not overjoyed with the further adjustment upward of any postage."[7] It urges the Commission to approve the proposed Standard Mail rates. *Id.*

Valpak Direct Marketing Systems, Inc., and Valpak Dealers' Association, Inc., (Valpak)[8] and the Public Representative[9] oppose the revised Standard Mail Flats prices because they believe the increase is minimal and not responsive to Order No. 1541. Valpak Comments at 2; PR Comments at 2. They both argue that the proposed

---

[6] Comments of the American Catalog Mailers Association, December 4, 2012, at 1 (ACMA Comments).

[7] Comments of the Direct Marketing Association Responding to Commission Order No. 1556, December 5, 2012, at 1 (DMA Comments). DMA concurrently filed a Motion for Acceptance of Late Filing of Response to Order No. 1556 (Motion). That motion is granted.

[8] Valpak Direct Marketing Systems, Inc., and Valpak Dealers' Association, Inc., Comments on the United States Postal Service Response to Order No. 1541, December 4, 2012 (Valpak Comments).

[9] Public Representative Comments on United States Postal Service Response to Order No. 1541, December 4, 2012 (PR Comments).

increase of Standard Mail Flats prices will be insignificant in increasing cost coverage and alleviating inequitable rates. Valpak Comments at 3; PR Comments at 4-5. Both parties state that the Postal Service has failed to comply with the other requirements of the FY 2010 ACD, such as providing a satisfactory explanation of how the proposed prices move Standard Mail cost coverage toward 100 percent and reduce intra-class cross-subsidy. Valpak Comments at 5; PR Comments at 9-10.

*Commission analysis.* The Commission finds that, as revised, the proposed Standard Mail price changes appear to comply with applicable Commission directives as required by Order No. 1541. The Postal Service has provided an explanation of how the proposed increases will move the product toward 100 percent cost coverage and, as a consequence, reduce the intra-class cross-subsidy. The Commission finds that an above-average price increase for Standard Mail Flats is expected to improve cost coverage more than the initially proposed below-average increase.

Although Valpak and the Public Representative take issue with the amount of the price increase, the Commission concludes that these rates comply with the FY 2010 ACD directives.

*Unused rate adjustment authority.* In its Response to Order No. 1541, the Postal Service requested clarification of footnote 66, which discusses availability of unused rate authority pursuant to 39 U.S.C. 3622(d)(2)(C)(iii). Docket No. R2011-1 was a price adjustment that was proposed 21 months after the previous price adjustment (in Docket No. R2009-2). In Order No. 606,[10] the Commission provided detailed explanations of how unused rate adjustment authority is calculated when notices of rate adjustments are filed more than 12 months apart, 39 CFR 3010.26. The Commission cited rule 3010.28, which limits the use of unused rate adjustment authority to the lesser of two percentage points or the sum of all unused rate adjustment authority. However, when the sum of unused rate adjustment authority is negative, it appears that rule 3010.28 is in conflict with rule 3010.27 and 39 U.S.C. 3622 (d)(2)(C)(iii)(III), which allow the Postal

---

[10] Under Order No. 606, Docket No. R2011-1, Order Approving Market Dominant Classification and Price Changes, and Applying Price Cap Rules, December 10, 2010.

Service to use unused rate adjustment authority in a first-in, first-out method. The Commission will initiate a rulemaking to resolve this conflict.

## III. NONPROFIT DISCOUNTS

In Order No. 1541, the Commission requested that the Postal Service explain why different discount levels for Commercial and Nonprofit Standard Mail are consistent with the Postal Accountability and Enhancement Act (PAEA) and not contrary to *National Easter Seal Society v. USPS*, 656 F.2d 754 (D.C. Cir. 1981). Order No. 1541 at 51. The Postal Service maintains that *National Easter Seal Society* did not hold that phasing in nonprofit discounts would necessarily be discriminatory, but rather simply required that the Postal Service have a reasonable ground for the phasing schedule. Response at 6.

The Postal Service states that "[t]he varying presort discounts among Commercial and Nonprofit Standard Mail arise from the complex task of designing rates that comply with 39 U.S.C. 3626(a)(6)," which requires that the average revenue per piece from nonprofit products equal, as nearly as practicable, 60 percent of the average revenue per piece from the corresponding Commercial products. *Id.* The complexity of this task may "preclude[s] the Postal Service from making Nonprofit presort discounts identical to Commercial presort discounts without setting the Nonprofit base rate higher than would be most efficient or preferable from a policy perspective." *Id.* at 7.

The Postal Service points out that, in previous rate cases and the current docket, some nonprofit discounts have varied from the corresponding Commercial presort discounts. *Id.* The Postal Service also filed updated pages reflecting worksharing discounts and benchmarks for Flats, High Density and Saturation Letters, and High Density and Saturation Flats/Parcels in Attachment B to its Response. It has shown nonprofit discounts on a separate line when they differ from Commercial discounts, along with the other discounts in the relevant category. *Id.* Attachment B. Its updated workpapers reflect a smaller differential between nonprofit and commercial discounts

Docket No. R2013-1                                    - 7 -

than those proposed prior to Order No. 1541. *Id.* Attachment A at 1-2.[11] The Postal Service states that the passthroughs for nonprofit workshare discounts are all at 100 percent or below, and can be justified the same way as the corresponding Commercial discounts. *Id.* at 8.

*Comments.* The Commission received one comment on nonprofit discounts.

The Alliance of Nonprofit Mailers (ANM) takes issue with the Postal Service's justifications supporting the discount disparity.[12] It states that the *National Easter Seal Society* case stands for the proposition that the Postal Service must not only provide reasonable ground for the differing discounts between nonprofit and commercial mail, but it must establish these grounds, not merely assume or assert them. ANM Comments at 3.

It also expresses skepticism about the Postal Service's assertion that equalizing nonprofit and commercial worksharing differentials while complying with 39 U.S.C. 3626(a)(6) is complex. *Id.* at 4. It points out that the statute does not require application of the 60 percent ratio to each individual rate cell or product. *Id.* It claims that there would only be moderate revenue leakage from making the nonprofit Standard Mail worksharing discount as deep as the corresponding commercial discounts. This leakage could be offset by making minor adjustments to other elements of the Standard Mail rate schedule. *Id.* at 9.

ANM also states that the Postal Service's assertion that equalizing the discounts may result in undue discrimination against undiscounted nonprofit rates and in favor of discounted rates is "without merit". *Id.* at 12. It maintains that price differences between rate categories of the same product that are justified by cost differences do not amount to undue discrimination. *Id.*

---

[11] *Compare with* United States Postal Service Notice of Market Dominant Price Adjustment, October 11, 2012, Attachment A at 46-47.

[12] Comments of Alliance of Nonprofit Mailers on USPS Compliance Filing, December 4, 2012, (ANM Comments).

Finally, ANM claims that previous worksharing discounts implemented in past rate cases do not provide precedential support for upholding disparate worksharing discounts, as the discrimination issue was not raised in previous cases. *Id.* at 13.

ANM argues that the Commission should order the Postal Service to equalize Standard Mail Commercial and Nonprofit workshare discounts and make reasonable offsetting rate adjustments to satisfy 39 U.S.C. 3626(a)(6). *Id.*

*Commission analysis.* Standard Mail nonprofit rates and discounts are subject to several legal requirements. First, 39 U.S.C. 3626(a)(6) requires Standard Mail nonprofit rates to be set in relation to their commercial counterparts regardless of the nonprofits' independent costs. Nonprofit rates are set to yield, as nearly as practicable, 60 percent of commercial revenues.

Second, nonprofit workshare discounts must meet the requirements of 39 U.S.C. 3622(e)(2), which provides that workshare discounts shall not exceed the cost that the Postal Service avoids as a result of workshare activity, unless the discount meets several limited exceptions. Additionally, in *National Easter Seal Society*, the court held that disparities between commercial and nonprofit discounts are impermissible unless supported by a rational justification that the differential treatment is "specifically authorized" by another section of the statute.

The Postal Service's planned Standard Mail rates are consistent with section 3626(a)(6). Likewise, its planned Standard Mail workshare discounts satisfy section 3622(e), *i.e.*, each is set below 100 percent of avoided cost or otherwise justified by a statutory exception.[13]

*National Easter Seal Society* was decided before the PAEA and 39 U.S.C. 3626(a)(6) were enacted. Section 3626(a)(6) is silent on differing levels of discounts. However, section 3626(a)(6)(C) provides that "[r]ate differentials within each subclass of

---

[13] 39 U.S.C. 3622(e)(2) provides that workshare discounts shall not exceed the cost that the Postal Service avoids as a result of workshare activity, unless the discount meets several limited exceptions. Here, the Commission found that all amounts are either below 100 percent or are justified exceptions, as discussed in Order No. 1541.

mail matter under former sections 4452 (b) and (c) shall reflect the policies of this title, including the factors set forth in section 3622(b) of this title." Section 3622(b)(4) specifically "allow[s] the Postal Service pricing flexibility." Further, section 3622(b)(8) recognizes that changes in rates may be "of unequal magnitude within" classes of mail.

The Postal Service correctly points out that the *National Easter Seal Society* case does not forbid a differential between discounts, but it requires a reasonable justification for the disparity. Here, it justifies the differential with an assertion that equalizing the Nonprofit presort discounts with the Commercial presort discounts without setting the Nonprofit base rates higher would be neither more efficient nor preferable from a policy perspective. The Commission finds that the Postal Service may use its pricing flexibility in setting workshare discounts for commercial and nonprofit Standard Mail, and that in the circumstances of this rate adjustment, its justification is reasonable.

In future rate adjustment proceedings, the Postal Service must continue to identify in its workpapers when nonprofit workshare discounts differ from their commercial counterparts and to justify deviations from the discounts applied to commercial mail.

## IV.     POTENTIAL NEW WORKSHARING DISCOUNTS

In response to Order No. 1541, the Postal Service provides a supplemental response to Chairman's Information Request No. 1, question 5. Response, Attachment C. The Postal Service reiterates its claim that it does not believe there is a worksharing relationship between Carrier Route and the new High Density Plus pricing tier. In addition, it states that the High Density Plus tier was developed through discussions with mailers and that some mailers will increase volumes to qualify for the new tier. It asserts that High Density mailers will not be harmed by the introduction of the new pricing tier. *Id.* at 2. The Postal Service indicates its willingness to participate in the future proceeding to address these issues and, based on the outcome of that

proceeding, "will provide necessary cost information in future Annual Compliance Reports." *Id.* The Commission appreciates the Postal Service's response.

*It is ordered:*

1. The Commission provisionally finds that the Postal Service planned price adjustments identified in the United States Postal Service Response to Order No. 1541, filed November 26, 2012, are consistent with 39 U.S.C. 3622(d), 3622(e), and 3626, and may be put into effect, as planned.

2. The Commission finds that the Postal Service planned price adjustments for Standard Mail identified in the United States Postal Service Response to Order No. 1541, filed November 26, 2012, satisfy the applicable directives for moving to remedy non compliant rates as set forth in the FY 2010 Annual Compliance Determination and further clarified and reaffirmed in Order No. 1427 and Order No. 1472.

3. The Commission finds the classification changes described in the United States Postal Service Response to Order No. 1541, filed November 26, 2012, are consistent with title 39 United State Code, and may be implemented with the changes to the proposed Mail Classification Schedule language described in the body of this Order. The appropriate language will be added to the draft Mail Classification Schedule.

By the Commission.

Shoshana Grove
Secretary

## CONCURRING OPINION OF CHAIRMAN GOLDWAY

Postal price changes do not occur in a vacuum. They entail considerable work by mailers and those who provide products and services to mailers, including software development. The prices and worksharing discounts offered by the Postal Service provide opportunities to mailers who can take advantage of them, but the ability to do so is a demanding challenge for the industry, given the need for adequate lead time to respond. The Postal Service's initial reluctance to adopt Standard Flats rates in accordance with the 2010 Annual Compliance Determination and with Commission Orders 1427 and 1472[1] effectively shortened the time mailers have to prepare for changes.

I am committed to facilitating prompt decisions from the Commission in response to requests for price adjustments from the Postal Service. In turn, I expect the Postal Service to respond to clear orders of the Commission by preparing price adjustments that satisfy PAEA requirements in a manner that provides adequate lead time for adoption by the industry.

---

[1] Docket No. ACR2010, Order on Remand, August 9, 2012 (Order No. 1427); Docket No. ACR2010-R, Notice and Order Confirming Termination of Stay, September 21, 2012 (Order No. 1472).

CONCURRING OPINION OF COMMISSIONER TAUB

For the pending Notice of Market Dominant Price Adjustment (Docket No. R2013-1), I concur with the Commission's findings that the Postal Service's latest pricing proposals remain consistent with the requirements of title 39. However, I find it important to highlight a significant issue that has been raised in the most recent proposal that results from Commission decisions in Order No. 1541, from which I dissented in part.

To recap, the Commission sent proposed rates back to the Postal Service until they reflected a level of price increase for Standard Mail Flats satisfying to the Commission. As I explained in my dissent in part in Order No. 1541, I believe the approach of the Commission is a step back in time toward its ratesetting role that was abolished with the former Postal Rate Commission. In its new role of regulator rather than ratemaker, the function of the Commission is to define the spectrum of lawful rates. Within this spectrum, the Postal Service is responsible for selecting the set of rates which, in its judgment, is most consistent with its statutory mission. The Commission may *reject* a given rate or classification as unlawful, but it should no longer *recommend* rates and classifications except in the most extraordinary cases.

To achieve the above-average price increase for the Flats product that the Commission sought, the Postal Service utilized a suggestion made by the Commission in Order No. 1541 to reduce the prebarcoding discount between automation and non-automation Flats. However, the Commission also suggested that "unused rate adjustment authority from Docket No. R2008-1 (0.062 percentage points) and Docket No. R2009-2 (0.041 percentage points) could be used pursuant to 39 U.S.C. 3622(d)(2)(C)(iii)." As the Postal Service explained, it chose not to access this unused authority because it is uncertain as to the consistency of the Commission's recommendation with the Commission's prior guidance in Order No. 606 (Docket No. R2011-1). Therefore, the Postal Service requested that the Commission clarify how

banked rate adjustment authority from these two old dockets may be used in order to facilitate such an approach in subsequent rate adjustments. *See* Postal Service Response to Order No. 1541, November 26, 2012, at 3 n.10.

Not only did the Commission in my view regress to its past ratesetting role vis-à-vis rates for Standard Mail, it is now apparent that its recommendation included an approach of using unused rate adjustment authority that could well be inconsistent with existing rules and the Commission's prior guidance in Order No. 606.

Given the significant controversy over the roles of the annual limitation and the unused rate adjustment authority in Docket No. R2011-1 two years ago, the Commission stated in December 2010 that it "will initiate a rulemaking to allow the Commission, the Postal Service, and all interested persons to suggest additions or alterations to 39 CFR 3010 subpart C to avoid future confusion." Order No. 606 at 5. Two years later, such a rulemaking has yet to be initiated. The Commission itself then reignited the unresolved confusion by recommending an approach to ratesetting in Order No. 1541 that could well be in conflict with current rules on applying unused rate adjustment authority.

Although the Postal Service chose not to follow the Commission's advice without the necessary clarity, I am heartened that in today's Order, as the Commission declared two years ago, it "will initiate a rulemaking" to avoid further confusion.